PORTMANN, APPELLEE, *v.* BOARD OF ELECTIONS OF STARK COUNTY ET AL., APPELLANTS.

(Decided October 29, 1938.)

Mr. *Lewis C. Wiggins*, Mr. *Merle D. Evans*, Mr. *Jack Roesch* and Mr. *William K. Yost*, for appellee.

Messrs. *Burt, Kinnison, Carson & Shadrach*, for appellants.

MONTGOMERY, P. J.   A referendum petition having been duly circulated and filed on a franchise ordinance passed by the council of the city of Massillon, the council did thereafter, on August 15, 1938, order the submission of this referendum to the electors of Massillon, the same to be at the general election on November 8, 1938, and a copy of the ordinance was certified to the defendant members of the board of elections. by the clerk of city council.

In accordance therewith the board of elections prepared a ballot for submission of the question to the electors of Massillon, which, in the form originally prepared, was as follows:

"REFERENDUM BALLOT

"Ordinance No. 3812 passed by the Council of the city of Massillon, Ohio, and ordered referred to the electors of said city, by petition.

|  | "Shall Ordinance No. 3812 be approved, providing for a contract with the Ohio Public Service Company, its successors and assigns, and fixing the maximum rates, terms and conditions upon which the Ohio Public Service Company, its successors, and assigns, shall supply electric energy to the city of Massillon, Ohio, and to all the domestic and commercial consumers of electric energy within the city of Massillon, Ohio, during the period of ten (10) years, commencing on the 20th day of December, 1937, and ending on the 20th day of December, 1947, and duly approved by the mayor on November 19, 1937." |
| --- | --- |
| "Yes |  |
| "No |  |

The same was thereafter submitted by the board of elections to the city solicitor of the city of Massillon

and he substituted for the word "approved" in the first line of the proposed ballot the word "disapproved" and, with this change, noted his endorsement on September 21, 1938.

Thereafter the board of elections caused to be printed a referendum ballot on this same ordinance in the following form:

| | |
|---|---|
| "Yes<br><br>"No | "Shall Ordinance No. 3812, providing for a contract with the Ohio Public Service Company, its successors and assigns, and fixing the maximum rates, terms and conditions upon which the Ohio Public Service Company, its successors, and assigns, shall supply electric energy to the city of Massillon, Ohio, and to all domestic and commercial consumers of electric energy within the city of Massillon, Ohio, during the period of ten (10) years, commencing on the 20th day of December, 1937, and ending on the 20th day of December, 1947, and duly approved by the mayor on November 19, 1937, be disapproved." |

On the same proposed ballot there were submitted two other issues for the electors of Massillon, one authorizing a bond issue, and another authorizing an increase in tax rate, both of which latter proposals were submitted in the affirmative form.

As finally drafted, these ballots, containing this referendum and the other two issues, were printed and delivered to the board of elections on October 7, 1938. The first published notice of the election in the city of Massillon was on October 14, 1938.

Thereafter, on October 22, 1938, plaintiff filed his petition in the Court of Common Pleas, setting forth

in substance the facts herein detailed and praying for an injunction to restrain the defendants from using the form of ballot proposed, and requiring them to submit a ballot in such form that the electors could vote "yes" for the approval and "no" against it.

On October 25, 1938, the defendants filed a demurrer to this petition, which was promptly overruled by the court. Thereafter, defendants filed their answer which admitted most of the allegations of the petition, but denied the basis of the claim of the plaintiff for an injunction and, as a second defense, averred laches on the part of the plaintiff.

Thereupon the case was submitted to the Common Pleas Court on the pleadings and an agreed statement of facts, and that court granted the relief prayed for in the petition.

An appeal was promptly perfected to this court on a question of law, and the same was submitted on October 26, 1938.

The occasion for the haste and the justification for it are evident from the fact that the election will be on November 8, 1938. The Common Pleas Court frankly admitted a hasty determination on its part. This court is forced to a like hasty determination and to an absence of a detailed discussion and citation of reasons which the importance of the case might justify. However, there is no doubt in the minds of the members of this court as to the propriety of the conclusion reached.

It is contended, in the first place, by the demurrer, and also by the answer, and by appellants on their appeal, that the plaintiff is without authority to maintain this action, either as an elector, or as a taxpayer. It is to be observed that this is an appeal to a court of equity to remedy a claimed injustice. Such an action is necessary for the protection not only of the plaintiff, but of numerous other electors in the city of

Massillon. The matter is one of general and public interest. It seems to us that, if the facts do show that a gross injustice would be done except for relief from a court, the situation presented is one which does justify a court of equity in granting relief, and the plaintiff is clearly within his rights in instituting and maintaining such an action.

It is argued that the remedy of the plaintiff, if any, is in mandamus and not by injunction. This position does not seem tenable to us. An injunction will lie not only to prevent a contemplated wrong where there is no adequate remedy at law, but to require affirmative action on the part of the alleged wrongdoer where equity and justice require it. We are convinced that equitable relief, in the way of a restraining order and an additional mandatory order, affords the proper remedy, rather than any mandamus action.

The question, therefore, is squarely presented in this action as to whether the submission of the ballot, in the form in which it is now proposed to submit it, fails to conform to the constitutional and statutory requirements, and whether it is so misleading as to justify intervention on the part of a court. We do not follow the contention of appellee that it would be unconstitutional or in violation of any statutory requirement to submit the issue in the form in which it is proposed to submit it. We do think, however, that the matter of the misleading character of the form in which it is proposed to submit it offers a serious question. It may be something of an assumption to assert that the electors would be misled and that they are not sufficiently intelligent to understand this ballot in its present form. However, a mere reading of it, and especially a reading of it in connection with the two affirmative issues submitted upon the same sheet, shows how confusing it would be to a great majority of the electorate, especially in an industrial center. A

knowledge of human nature and human limitations, and of the experience of an electorate of any city in voting upon complicated matters, removes this question from the realm of supposition and assumption as to its possible effect.

The electorate of any subdivision, having duly called for a referendum on an ordinance, is entitled to have that referendum ballot submitted in clear and intelligible terms, subject to a minimum of misunderstanding or misinterpretation. To submit it in the form in which it was originally drafted by the board of elections, or in a form somewhat similar thereto, would work no injustice to anyone. It would but bring about an opportunity granted to the electorate of passing, without confusion, upon an issue presumably of importance to it. In the absence of injustice done to anyone, and with a showing of clear necessity of clarification of this ballot for the benefit of the electors, there is no question in the minds of the members of this court as to the propriety of granting the relief.

As to this suggested defense of laches, it seems to us that no unconscionable length of time did elapse. In the opening paragraphs of this opinion, we have called attention to all the important dates surrounding or affecting this situation. True, the plaintiff might have been more alert and have acted a few days sooner than he did, but we cannot see that the delay is fraught with any serious consequences, or that it was, as suggested, an unconscionable delay.

It is stipulated in the agreed statement of facts that perhaps fifteen electors have already cast absent voters' ballots, and that as to this issue these fifteen will be disfranchised. The casting of an absentee ballot is a privilege and not an absolute right. It is a privilege accorded individuals who, because of their own business, or their own pleasure, see fit not to be within the jurisdiction, or within the municipality, on

election day. They must take the situation as they find it. If they have absented themselves from the voting place at the time the issue is presented properly, they have so absented themselves at their own risk.

The judgment of the Court of Common Pleas will be affirmed.

*Judgment affirmed.*

SHERICK and LEMERT, JJ., concur.